MCH



Judson T. Mihok
Assistant United States Attorney
Judson.Mihok@usdoj.gov

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-3091

April 20, 2022

USDC- BALTIMORE
'22 JUN 30 PM3:16

Teresa Whalen
2136 Poplar Ridge Rd
Pasadena, MD 21122
*VIA E-MAIL*

Re:     *United States v Luther Moody Trent*
        Case No. ELH 22-0111

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Luther Moody Trent (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office") (together "the Parties"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **May 20, 2022**, it will be deemed withdrawn. The terms of the Agreement are as follows:

**Offense of Conviction**

1.      The Defendant agrees to plead guilty to the one-count Indictment which charges the Defendant with **Malicious Destruction of Property by Fire, 18 U.S.C. § 844(i)**. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

**Elements of the Offense**

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

a.      The Defendant set fire (or used an explosive) to damage or destroy, or in an attempt to damage or destroy, property;

b.      The property was used in or affecting interstate or foreign commerce;

c.      The Defendant acted maliciously.

1

## Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 844(i) | 5 years mandatory minimum | 20 years | 3 years | $250,000 |

a.      Prison:   The Bureau of Prisons has sole discretion to designate the institution at which the Defendant will serve his term of imprisonment.

b.      Supervised Release:   If the Defendant violates the conditions of his supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259 (making restitution mandatory in cases under Chapter 110 of Title 18, including the offense of conviction).

d.      Payment:  Any fine or restitution shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:   The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

2

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.     The Defendant further understands that any Guidelines Stipulation contained herein is not binding on the Court.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.      The Parties further agree that the applicable base offense level is **24** pursuant to United States Sentencing Guidelines ("USSG") §2K1.4(a)(1) to account for the Defendant knowingly creating a risk of death or serious bodily injury to any person other than a participant in the offense.

### Relevant Conduct: USSG §2A2.1

b.      Under USSG §2A2.1(a)(1), the parties stipulate and agree that the object of the offense would have constituted first degree murder, so the base offense level is **33**.

c.      Under USSG §3D1.2 and USSG §3D1.3, there were three potential victims, and therefore two additional groups at a base offense level 33.  Under USSG §3D1.4 (a), the group for Victim 1 is 33, Victim 2 is 33, and Victim 3 is 33, so 3 units accrue.  As a result, the final adjusted offense level is **36** under USSG §3D1.4.  Since the base offense level under USSG

4

§2K1.4(a)(1) is 9 or more levels less serious, it is disregarded. The final adjusted base offense level is **36**.

        d.      This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an **additional 1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        e.      Accordingly, the Parties anticipate a **final offense level of 33** after accounting for the above, including acceptance of responsibility.

        7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

        8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

        9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

        10.      In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

5

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.     The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement

will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea.

## Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Judson T. Mihok
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/14/22
Date

Luther Trent
Luther Moody Trent

8

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/20/22

Date

Teresa Whalen

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On May 21, 2021 at approximately 1:30 a.m., Luther Moody Trent ("Trent") (DOB XX/XX/00) poured gasoline along the exterior of a residence located at 1900 Linden Avenue, Baltimore, Maryland 21217, and then set the gasoline on fire. The fire moved along the exterior and into the rear of the residence where it set a deck ablaze, and then moved inside the building, doing substantial damage to 1900 Linden Avenue. Significant damage was also done to the adjoining property, 1902 Linden Avenue.

As Trent knew, the residence located at 1900 Linden Avenue was a townhome occupied at the time by Victim 1, Victim 2, and Victim 3. The townhome was owned at the time of the fire by Victim 4 who rented the residence to Victim 1, Victim 2, and Victim 3. Victim 1, Victim 2, and Victim 3 were all alerted to the fire and able to evacuate without injury. The firefighters were able to extinguish the fire without injury.

Because 1900 Linden Avenue was rented by Victim 4 to Victims 1, 2, and 3, 1900 Linden Avenue was used in or affecting interstate or foreign commerce as a rental property.

Victim 1 was in a prior volatile relationship with Trent which resulted in the police being called on at least one prior occasion, as well as an order of protection being issued in favor of Victim 1. Examination of Victim 1's cellular phone revealed that Trent had sent threatening text messages to Victim 1. A Facebook post from Trent's account dated January 8, 2021 follows:

 

Upon running Trent's name, Baltimore City Police Department Detective Kyle Kruesi was able to pull up video of a prior incident with Trent and Victim 1 on March 23, 2021. Upon viewing Trent in the video, Det. Kruesi realized that Trent had approached him earlier at the scene of the arson and identified himself as "Trey Johnson." At the time, Trent was shirtless, wearing glasses and jeans, and inquired about his "cousin," whom he claimed resided in the residence. Det. Kruesi noted that "Trey Johnson" was acting nervous, and left the scene shortly thereafter driving a two-door black Honda Accord. Victim 1 confirmed that Trent drives a two-door black Honda, and indicated that the individual "Trey Johnson" described as his "cousin" had not lived at 1900 Linden Avenue in several months.

Canvas of the area resulted in the recovery of video surveillance recordings from a variety of sources and vantage points. In one surveillance video, a figure is seen walking up the street toward 1900 Linden Ave. at approximately 1:30 a.m., just prior to the fire. Two minutes later, just after the fire was set, an individual who appears to be shirtless is seen running down the street, away from 1900 Linden Avenue. Other video surveillance footage thereafter shows a black two door Honda circling the area after the fire.

Baltimore Fire Investigators determined that the fire was incendiary, that is, intentionally set. The report notes that the origin of the fire was under the wooden deck in the rear of the residence.

Trent was interviewed about the incident by WBFF Fox Baltimore News, and that interview aired on January 11, 2022. See, https://foxbaltimore.com/news/local/man-torches-ex-girlfriends-home-says-plea-deals-like-his-send-wrong-message-to-baltimore. During the course of the interview, Trent admitted setting the fire by pouring gasoline along the side of the house where Victim 1 resided and that he had done so because he was upset that he could no longer see

Victim 1. Trent explained that it was a "Romeo and Juliet type of thing ... if I can't have her, nobody can, or at least nobody in Baltimore."

Trent violated Title 18 United States Code, Section 844(i) (Malicious Destruction of Property Used In/Affecting Interstate Commerce by Fire), that is:

(1) Trent set fire to damage or destroy, or in an attempt to damage or destroy, the property located at 1900 Linden Avenue;

(2) 1900 Linden Avenue was used in or affecting interstate or foreign commerce as a rental property; and

(3) Trent acted maliciously (intentionally or with willful disregard of the likelihood that damage will result, and not mistakenly or carelessly).

SO STIPULATED:

_____
Judson T. Mihok
Assistant United States Attorney

_____
Luther Moody Trent
Defendant

_____
Teresa Whalen
Counsel for Defendant

3